UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 10-CV-1158 (JFB) (AKT)

---

ARNOLD HEMANS,

Plaintiff,

VERSUS

LONG ISLAND JEWISH MEDICAL CENTER, ET AL.,

Defendants.

---

**MEMORANDUM AND ORDER**
October 28, 2010

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Arnold Hemans ("Hemans" or "plaintiff") brings this action alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYHRL") against defendants Long Island Jewish Medical Center ("LIJ Medical Center"), North Shore-Long Island Jewish Health Care, Inc., Ilene Manheimer, Joseph Rivera, and Jerry Ryan (collectively, "defendants"). According to the complaint, plaintiff is 75 years old and has worked as a Security Officer at defendant LIJ Medical Center since 1971. Plaintiff alleged that defendants discriminated against him—including by suspending him on three separate occasions—on the basis of his age and national origin, and retaliated against him when he made complaints about the purported discrimination against him. Plaintiff further alleged a hostile work environment based upon his age and national origin.[1]

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, defendants' motion is granted in part and denied in part.

---

[1] In plaintiff's opposition papers (and as confirmed at oral argument), plaintiff withdrew any claims based upon national origin.

## I. BACKGROUND

### A. Facts

The following facts are taken from the Amended Complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff was born on January 22, 1935. (Am. Compl. ¶ 11.) On March 29, 1971, plaintiff began his employment with defendant North Shore-Long Island Jewish Health Care, Inc. ("Health System"), and since then, plaintiff has worked for defendant LIJ Medical Center as a Security Officer. (*Id.* at ¶ 12.) Throughout plaintiff's employment with defendants, his performance was satisfactory or better. (*Id.* at ¶ 13.)

In 2001 or 2002, plaintiff began filling in for the Sergeant when plaintiff worked the evening shift. (*Id*. at ¶ 14.) As such, he would perform the Sergeant's duties whenever the Sergeant was unavailable, and was charged with handling emergencies and filing reports. (*Id*.) Plaintiff received an extra $3.27 per hour for this work. (*Id.*) In the Fall of 2006, defendant Jerry Ryan became the Director of Security at the LIJ Medical Center and allegedly commenced a pattern of harassing and discriminating behavior against plaintiff because of plaintiff's age. (*Id*. at ¶ 15.) On Ryan's first day working with plaintiff, Ryan came up to plaintiff and Officer John Alexander, who is over sixty years old, and stated, without even introducing himself, that he did not want plaintiff and Officer Alexander to work together. (*Id*. at ¶ 16.) It is further alleged that, during that conversation, Ryan criticized plaintiff and Alexander, in an angry manner, for moving too slowly. (*Id*. at ¶ 17.)

According to the Amended Complaint, in July 2007, defendants accused plaintiff of failing to cooperate with management in assisting a wheelchair-bound woman gain access to her husband who was undergoing treatment at the hospital. (*Id*. at ¶ 18.) Plaintiff, however, did not encounter any visitor in a wheelchair during that time period, and he did not refuse anyone access to patients. (*Id*. at ¶ 19.) Ryan claimed that he investigated the matter, but plaintiff was never informed of the results of the investigation. (*Id*.) Even after plaintiff explained that he did not engage in such conduct, he was suspended indefinitely. (*Id.*)

Plaintiff further alleges that, during the above-referenced investigation, he mentioned to Barbara Felker, who was a Human Resources representative from LIJ Medical Center, and Elaine Rosenblum, who was the Administrator of LIJ Medical Center, that he believed he was being accused falsely because of his age or because of his culture, referring to his status as an immigrant from Jamaica. (*Id*. ¶ 20.) Rosenblum and Felker denied that plaintiff was being discriminated against because of his age and/or national origin. (*Id*.) Thereafter, plaintiff was suspended for two days in August 2007, without pay. (*Id.* at ¶ 21.)

Plaintiff also alleges a series of other retaliatory acts in 2007 by the defendants following his informal complaint of discrimination, including the following: (1) "[u]pon returning from the suspension, [p]laintiff was not permitted to return to Zucker Hillside, but was required to go to the main LIJ Medical Center hospital" at the

direction of defendant Ryan, and was unable to retrieve items in his Zucker Hillside locker (*id.* ¶ 22); (2) at the direction of defendant Ryan, plaintiff also was told that he could not enter the Security Office, thereby preventing him from accessing the restrooms and the break room for the security officers, even though other security officers were allowed to access that office (*id.* ¶ 23); (3) "after this transfer, [p]laintiff was not given a locker . . . . [and was] denied a key to be used to open doors around the Medical Center" (*id.* ¶¶ 24-25); (4) plaintiff was no longer permitted to fill in for the Sergeant during evening shifts (*id.* ¶ 26); and (5) "[o]n October 27, 2007, Ryan asked [p]laintiff to go out into the rain and check on the parking lot[,] even though no one was parked in that lot . . . . [and] commented to Sergeant Harrison that Ryan wanted to see how much [p]laintiff could take" (*id.* ¶ 27). Plaintiff also alleges that, in 2008, defendant Ryan reduced the number of overtime days that plaintiff could work without special permission from three days to two days. (*Id.* ¶ 28.)

According to the complaint, plaintiff also was suspended for one day in January 2008 because of alleged communication issues, even though plaintiff was not asked his side of what had occurred. (*Id.* ¶¶ 29-30.) It is further alleged that, since April 2008, defendants have given plaintiff different assignments almost every day, rather than one steady post, which has resulted in plaintiff having to move about the LIJ Medical Center's multiple facilities, often without training for a particular assignment. (*Id.* ¶ 31.)

Plaintiff further alleges that, on February 3, 2009, he arrived at his post and saw a newspaper article regarding an alleged domestic incident involving the family of a Health System employee. (*Id.* ¶ 32.) A visitor to the Hospital came by and demanded to take the newspaper article with her, but plaintiff refused because it was not plaintiff's article and instead had come from the security office. (*Id.* ¶ 32.) Plaintiff reported the incident to defendant Sergeant Manheimer, who was one of plaintiff's supervisors, and Manheimer gave a statement to Ryan blaming plaintiff for the incident. (*Id.* ¶ 33.) Plaintiff was suspended for one week because of this incident and, while informing plaintiff of that suspension, Ryan allegedly stated to plaintiff, "This will be your last time here. Why don't you retire? It's time for you to go." (*Id.* ¶¶ 33-34.) Plaintiff alleges that he was offended by these questions and comments, as well as by the hateful manner in which they were made by Ryan. (*Id.* ¶ 35.) Plaintiff called Human Resources that same day and was referred to defendant Joseph Rivera, who was a Human Resources representative. (*Id.* ¶ 36.) By the time plaintiff spoke to Rivera later that day, Rivera had already spoken with Ryan, and plaintiff complained to Rivera about the Ryan incident. (*Id.* ¶ 37.) Rivera allegedly promised plaintiff that he would arrange a grievance regarding the Ryan incident, but never spoke to plaintiff after making that promise and did not arrange a hearing. (*Id.*) On March 24, 2009, plaintiff filed a Charge of Discrimination with the EEOC. (*Id.* ¶ 38.)

According to the Amended Complaint, in the Summer and Fall of 2009, Ryan awarded security officers with recognition and flashlights for excellent attendance, and plaintiff received no such awards despite perfect attendance, except for two sick days, between 2007 and 2009. (*Id.* ¶ 39.) Plaintiff also alleges that, in early 2010, another employee (Don Kelly), who is in his seventies, was terminated from his

employment after being subjected to repeated scrutiny.[2] (*Id.* ¶ 40.)

Finally, plaintiff alleges that, since 2006, he has been denied payment for his "heat days," which are benefits given to employees based on their longevity of service with the LIJ Medical Center. (*Id.* ¶ 42.) In particular, he claims that he is the only employee who has been denied payment for unused heat days that have been accumulated, which consists of 52 outstanding days owed to him. (*Id.*)

B. Procedural History

On March 15, 2010, plaintiff filed the instant action. On June 21, 2010, plaintiff filed an amended complaint. On July 30, 2010, defendants moved to dismiss as to all claims. Plaintiff filed his opposition on September 7, 2010. Defendants filed a reply on September 21, 2010. Oral argument was held on October 8, 2010. This matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citations omitted)).

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not

[2] The Amended Complaint also recounts an alleged interaction in February 2010 between plaintiff and defendant Manheimer in which Manheimer allegedly used angry words at plaintiff during a meal break. (*Id.* ¶ 41.)

attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## III. DISCUSSION

### A. Timeliness of Claims

Defendants contend that the bulk of plaintiff's claims must be dismissed as untimely. As set forth below, the Court concludes that plaintiff has alleged timely claims for discrimination, retaliation, and a hostile work environment under both federal and state law.

#### (1) Federal Claims

"To maintain a timely action under 42 U.S.C. § 2000e-5, a plaintiff must comply with three requirements: (1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue letter, and (3) file an action within 90 days of receipt of that letter." *Collier v. Boymelgreen Developers*, No. 06-CV-5425, 2007 U.S. Dist. LEXIS 36181, at *6 (E.D.N.Y. May 17, 2007) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)). With respect to the timing of the EEOC charge, it is well-settled that in states such as New York that have a fair employment agency, prior to filing a claim in federal court pursuant to the ADA, ADEA or Title VII, a plaintiff must institute proceedings with the EEOC within 300 days of the alleged act of discrimination.[3] *See* 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a) (incorporating the timeliness requirements of Title VII, as codified in 42 U.S.C. § 2000e-5(e)(1) (2004)); *see also Harris v. City of N.Y.*, 186 F.3d 243, 247 n.2 (2d Cir. 1999); *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999). These statutory filing periods are "analogous to [ ] statute[s] of limitations," *Van Zant*, 80 F.3d at 712, and, as

[3] With respect to the ADEA, it is well settled that "[u]nlike Title VII, the ADEA does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court." *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 563 (2d Cir. 2006) (citations omitted). "However, in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file her federal lawsuit within 90 days after receipt of the letter." *Id.* Moreover, in any event, "[u]nder the ADEA, [the plaintiff] was required to file a charge with the EEOC within 300 days of the allegedly unlawful employment practice." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008) (citations omitted).

such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 213-14 (2d Cir. 2006). The period begins to run for each discrete discriminatory or retaliatory act when each act occurs. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Hill*, 312 F. Supp. 2d at 472.

Accordingly, in the instant case, plaintiff's claims for relief under the ADEA that took place 300 days or more prior to the date of his EEOC filing on March 24, 2009 would generally be time-barred.

In the instant case, as confirmed at oral argument, plaintiff's federal age discrimination claim is based upon his suspension in February 2009.[4] As defendants' counsel acknowledged, this claim is timely. Similarly, with respect to a hostile work environment claim, "the statute of limitations requires that only one . . . harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117). In the instant case, the hostile work environment claim is based upon the alleged conduct that continued into the Fall of 2009 and, thus, also is timely. Accordingly, any

[4] Plaintiff's counsel made clear that, with respect to the retaliation claim, he is asserting that claim only with respect to the alleged retaliation that occurred following his alleged protected activity in 2007, and not with respect to any actions by the defendants in 2009 and 2010. Moreover, plaintiff's counsel also clarified that the allegations in the complaint regarding conduct dating back to 2006, which are clearly untimely, are only in the complaint for purposes of background and are not the basis for a separate claim. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (citing *Morgan*, 536 U.S. at 113, and *Petrosino v. Bell Atl.*, 385 F.3d 210, 220, 226 (2d Cir. 2004)). The Second Circuit has stated that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation [or discrimination] involved, may be considered to assess liability on the timely alleged act." *Id.* (citations omitted) (holding that district court, by failing to consider time-barred acts of retaliation which, although not actionable, "might nonetheless remain admissible at trial and could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts," had erroneously concluded that plaintiff could not establish a *prima facie* case); *see also Petrosino*, 385 F.2d at 220 ("[E]vidence of earlier promotion denials may constitute relevant 'background evidence in support of a timely claim.'" (citation omitted)); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988) (finding that, while a decisionmaker's statements indicating racial bias "standing alone, occurring as they did over five years before the [adverse employment action], could not suffice to uphold a finding [of discrimination], they do add support, in combination with the other evidence, to the ultimate conclusion"), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, codified in 42 U.S.C. § 1981(b), *as recognized in Linsalata v. Tri-State Gen. Ins., Ltd.*, No. 92-0596 (ABB), 1992 U.S. Dist. LEXIS 19665, at *3-4 (E.D. Pa. Dec. 17, 1992). The Court, however, declines to address this evidentiary issue at this juncture and will defer, until the time of trial, the issue of the admissibility of any time-barred acts as background evidence.

motion to dismiss the age discrimination claims arising from the February 2009 suspension, or the hostile work environment claims, on timeliness grounds is denied.

(2) NYHRL

Section 296 of the NYHRL permits lawsuits to be filed three years from the date of the injury allegedly caused by discrimination. *See Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). Therefore, any discrete acts of discrimination that occurred between March 15, 2007 and March 15, 2010 (which is the date of the filing of the complaint in this action) are timely. With respect to his state age discrimination claim, plaintiff alleges three discrete acts of discrimination within the applicable state statute of limitations—namely, the suspension in July 2007, the suspension in January 2008, and the most recent suspension in February 2009. Similarly, with respect to his state retaliation claim, plaintiff alleges timely acts of retaliation in 2007 and 2008 based upon his alleged protected activity in the Summer of 2007. Finally, his state hostile work environment claim, based upon the comment made at the time of his suspension in February 2009, is also timely. Thus, the motion to dismiss these claims on timeliness grounds is denied.

B. Failure to State a Claim[5]

(1) Pleading Standard in Discrimination Cases

With respect to pleadings in discrimination cases, the Supreme Court, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), rejected the concept that there is a heightened pleading standard and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[6] *See Swierkiewicz*, 534 U.S. at 510 ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City*

---

[5] In addition to alleging claims under federal law, plaintiff alleges discrimination under the Human Rights Law. The same standards governing federal discrimination claims generally apply to claims under the Human Rights Law. *See Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant*, 80 F.3d at 714-15; *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992). Therefore, the Court will analyze the motion to dismiss both claims together.

[6] In *McDonnell-Douglas*, the Supreme Court established a three-step, burden-shifting framework that is used in discrimination cases. Under that framework, a plaintiff who cannot show direct evidence of discrimination can nonetheless establish a *prima facie* case of discrimination by showing (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

*Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* holding to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII).

The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, 549 U.S. 199, 212-13 (2007). No such heightened pleading requirement for discrimination claims exists. Therefore, the controlling standard for survival of a motion to dismiss lies not in *McDonnell Douglas*, but in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513 (complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

To the extent the defendants suggest in their papers (and at oral argument) that *Iqbal* and *Twombly* somehow overruled *Swierkiewicz* and fundamentally altered the amount of detail required in a discrimination complaint to survive a motion to dismiss, the Court disagrees. The recent Supreme Court decisions in *Iqbal* and *Twombly* did not obviate the well-settled *Swierkiewicz* standard. Indeed, the Court in *Twombly* explicitly reaffirmed *Swierkiewicz*. *See Twombly*, 550 U.S. at 570 (citing *Swierkiewicz*, 534 U.S. at 508). Moreover, in the wake of *Twombly* and *Iqbal*, the Second Circuit has reiterated that *Swierkiewicz* continues to be the proper framework for analyzing whether a plausible claim for discrimination has been stated. *See, e.g.*, *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible, we reject [appellant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (internal quotations and citations omitted)); *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that the *Twombly* Court "affirmed the vitality of *Swierkiewicz*"); *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."); *accord E.E.O.C. v. Propak Logistics, Inc.*, No. 1:09cv311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[E]ven after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." (citing *Boykin*, 521 F.3d at 212-15)).

(2)The Age Discrimination Claims

To establish a prima facie case under the ADEA, a plaintiff must demonstrate "membership in the protected age group, qualifications for the job[] at issue, an adverse employment action, and that the adverse action occurred under circumstances giving rise to an inference of discrimination." *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)).

With respect to the age discrimination claim, plaintiff alleges that he was suspended on three separate occasions—namely, in August 2007, in January 2008, and in February 2009—and that these adverse actions were motivated by his age. As a threshold matter, the alleged suspensions sufficiently state an "adverse employment action" at this stage.[7] *See, e.g.*, *Faul v. Potter*, 355 F. App'x 527, 530 (2d Cir. 2009) ("In their totality, the circumstances here, we believe, render the material adversity of the seven-day suspension an issue not appropriate for summary disposition."); *Rupert v. City of Rochester, Dep't of Envtl. Servs.*, 701 F. Supp. 2d 430, 440 (W.D.N.Y. 2010) ("A suspension without pay qualifies as an adverse action."); *accord Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 284 (S.D.N.Y. 2000) (collecting cases). Defendants' argument on the motion to dismiss is that plaintiff has failed to supply facts in the Amended Complaint which raise an inference of discrimination and, thus, has not articulated a plausible discrimination claim that can survive a motion to dismiss. As set forth below, the Court disagrees.

In addition to alleging that he is in the protected class and suffered these suspensions as a result of his age, plaintiff has alleged other facts to support his claim of age discrimination. First, plaintiff alleges that none of the three suspensions were justified and each was imposed without sufficient investigation. (Am. Compl. ¶¶ 19, 29-30, 32-33.) Second, plaintiff alleges that, at the time he was informed of his suspension in February 2009, Director of Security Ryan told plaintiff, "This will be your last time here. Why don't you retire? It's time for you to go." (Am. Compl. ¶ 34.) Third, plaintiff alleges that another employee, Don Kelly, who also in his seventies, was terminated from employment in 2010 after being subjected to repeated scrutiny. (Am. Compl. ¶ 40.) Finally, plaintiff alleges other incidents during his employment, which he contends also demonstrate the employer's pretextual intent with respect to the suspensions at issue. For example, plaintiff alleges that, since 2006, he has not received payment for "heat days," which are given to employees based upon their longevity with LIJ Medical Center. In particular, he asserts that he has not received payment for 52 outstanding heat days owed to him, and "[n]o other employee has been denied the opportunity to receive payment for his or her heat days." (Am. Compl. ¶ 42.) Based upon a review of the Amended Complaint, and drawing all reasonable inferences in plaintiff's favor, the Court concludes that these allegations are more than sufficient to give rise to a plausible inference of discrimination and state plausible claims of age discrimination, related to the three suspensions, that survive a motion to dismiss.

The Court has considered defendants' arguments and finds them to be unpersuasive at the motion to dismiss stage. For example, in their Reply Memorandum, defendants cite

---

[7] Defendants argue that other allegations in the complaint regarding other incidents also do not constitute "adverse employment actions." As a threshold matter, it does not appear from the Amended Complaint that these other incidents are being alleged as separate claims, but rather are being provided as background, and on the issue of intent, with respect to the discrete acts of discrimination—namely, the suspensions. In any event, for purposes of a motion to dismiss, the Court need not examine whether each of these other incidents would constitute an adverse action, because the alleged suspensions are sufficient to state an "adverse employment action" that survives a motion to dismiss.

five cases for the proposition that "a remark about retirement is not evidence of discriminatory animus based on a plaintiff's age." (Defs.' Reply at 5-6 (citing cases).) However, those cases are inapposite for two reasons. First, none of those cases involved motions to dismiss; rather, each involved a summary judgment motion in which the Court found, after discovery, that plaintiff did not have sufficient evidence to give rise to an inference of discrimination. Second, "[a]lthough evidence of one stray comment by itself usually is not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of all the evidence." *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decisionmaker, do not [without more] constitute sufficient evidence to make out a case of employment discrimination. . . . When, however . . . , other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance.")). Here, as noted above, plaintiff alleges more than the one remark made in connection with his February 2009 suspension, and the allegations are more than sufficient to state a plausible claim that survives a motion to dismiss at this stage of the litigation.

Similarly, although in their papers and at oral argument, defendants cited several cases where dismissal was granted at the motion to dismiss stage (*see* Defs.' Mem. of Law at 8), none of those cases involved allegations in the complaint which included, among other things, a remark that could reasonably be interpreted to relate to age and to another employee in the protected class who was terminated during the period at issue. Rather, they involved conclusory allegations of discrimination with no link to any discriminatory animus. *See, e.g.*, *Perry v. State of N.Y. Dep't of Labor*, No. 08 Civ. 4610 (PKC), 2009 WL 2575713, at *3 (S.D.N.Y. Aug. 20, 2009) (dismissing amended complaint where, despite having the initial complaint dismissed for failure to state a claim, the amended complaint contained only conclusory allegations of discrimination and was "otherwise silent as to any discriminatory purpose or motivation directed toward the plaintiff"); *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414-15 (E.D.N.Y. 2009) (noting lack of any comments indicating racial bias and concluding: "[T]he mere fact that the defendant communicated with the plaintiffs in English, without any additional facts suggesting this was done to purposely discriminate against [plaintiff's son], does not raise an inference of discriminatory intent. Likewise, the fact and length of [the son's] suspension, with no allegations concerning defendant's treatment of other similarly situated students, also does not create an inference of discriminatory intent."); *Smith v. St. Luke's Roosevelt Hosp.*, No. 08 Civ. 4710 (GBD) (AJP), 2009 WL 2447754, at *17 (S.D.N.Y. Aug. 11, 2009) ("In discussing the events leading up to his termination, [plaintiff] does not allege even one fact that connects his race to his termination."), *adopted* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009).

Finally, to the extent that defendants claim that the other incidents cannot be used to give rise to an inference of discrimination, the Court disagrees. As noted *supra*, depending upon the circumstances, these other alleged actions (even if time-barred) could be used by a plaintiff to try to demonstrate an inference

of discrimination as to the timely claims. *See supra*, n.4.

Accordingly, the Amended Complaint alleges plausible claims of age discrimination—relating to the three suspensions (with the earlier two suspensions being timely only under state law)—that survive a motion to dismiss.

(2)The Retaliation Claim

At oral argument, plaintiff's counsel made clear that the plaintiff is not seeking to allege retaliation following plaintiff's filing of a charge of discrimination with the EEOC in March 2009; rather, plaintiff is alleging a retaliation claim under state law based upon protected activity that occurred in the Summer of 2007 and the alleged retaliation that followed in 2007 and 2008, including the August 2007 suspension.

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). For purposes of surviving the instant motion to dismiss, once again, plaintiff need only provide defendants with fair notice of his retaliation claims and the grounds upon which such claims rest. *See Swierkiewicz*, 534 U.S. at 512. As set forth below, the Court finds that plaintiff has met this standard and, thus, has sufficiently pled a retaliation claim.

As a threshold matter, in the Amended Complaint, plaintiff alleges that, during an investigation of him in the Summer of 2007, he "mentioned to Barbara Felker, a HR representative from LIJ Medical Center and Elaine Rosenblum, the Administrator of LIJ Medical Center, that he believed that he was being accused falsely because of his age or because of his culture (being an immigrant from Jamaica)." (Am. Compl. ¶ 20.) There is no question that these allegations are sufficient to constitute "protected activity" for purposes of his NYSHR retaliation claim. *See, e.g.*, *Borski v. Staten Island Rapid Transit*, No. 04 CV 3614 (SLT) (CLP), 2006 WL 3681142, at *4 (E.D.N.Y. Dec. 11, 2006) ("For Plaintiff's conduct to constitute participation in a protected activity, it is enough that he has made 'informal protests of discrimination, including making complaints to management.'" (quoting *Gregory*, 243 F.3d at 700-01)). Moreover, plaintiff alleges retaliation in the form of, among other things, a suspension without pay in August 2007. The alleged suspension is sufficient to constitute an adverse action for purposes of retaliation. *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that a suspension without pay for one week, even if plaintiff is later reimbursed, is sufficient to constitute an adverse employment action because plaintiff "suffered the loss of the use of her wages for a time"). Thus, the focus of defendants' argument on the motion to dismiss the retaliation claim, as with the age discrimination claim, is that plaintiff has failed to allege facts that give rise to a plausible inference that the adverse actions

were taken because he engaged in protected activity. As set forth below, the Court disagrees.

First, the Amended Complaint alleges that, within one month of the informal complaint about age discrimination in or about July 2007, plaintiff was suspended for two days without pay. (Am. Compl. ¶¶ 19-21.) The close temporal proximity between plaintiff's protected activity and his suspension raises a plausible inference that retaliation for the protected activity was the cause of his suspension. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting *Reed*, 95 F.3d at 1178) (additional quotation marks and citation omitted)). In addition to the temporal proximity between the protected activity and the suspension, plaintiff also alleges that there were other actions in that time frame that suggested a retaliatory motive by defendants, including, among other things, the following: (1) "[u]pon returning from suspension, plaintiff was not permitted to return to Zucker Hillside, but was required to go to the main LIJ Medical Center hospital" at the direction of defendant Ryan, and was unable to retrieve items in his Zucker Hillside locker (Am. Compl. ¶ 22); (2) at the direction of defendant Ryan, "[p]laintiff was told that he could not enter the Security Office, thereby barring him from being able to access the restrooms and the break room for the security officers, even though other security officers were allowed to access that office" (Am. Compl. ¶ 23); (3) "[a]fter this transfer, Plaintiff was not given a locker" and "was also denied a key to be used to open doors around the Medical Center" (Am. Compl. ¶¶ 24-25); (4) "[p]laintiff stopped being able to fill in for the Sergeant during evening shifts" (Am. Compl. ¶ 26); and (5) "[o]n October 27, 2007, Ryan asked Plaintiff to go out into the rain and check on the parking lot even though no one was parked in that lot" and "Ryan then commented to Sergeant Harrison that Ryan wanted to see how much Plaintiff could take" (Am. Compl. ¶ 27). In sum, the Amended Complaint gives defendants notice of the bases for plaintiff's retaliation claim and states a plausible claim for retaliation. As such, plaintiff has adequately pled his retaliation claim.

(3) The Hostile Work Environment Claim

Defendants argue that the Amended Complaint fails to state a plausible hostile work environment claim. As set forth below, the Court disagrees.

Under Title VII, a hostile work environment is established by a plaintiff showing that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Terry*, 336 F.3d at 147-48. "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

The conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks and citation omitted). In addition, a plaintiff seeking to

establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted). Other factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148 (quotation marks omitted). The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (internal quotations marks and citations omitted).

The Court concludes that plaintiff has sufficiently alleged a plausible claim of hostile work environment. At oral argument and in plaintiff's opposition brief, plaintiff's counsel focused on the alleged statement by defendant Ryan in February 2009, "This will be your last time here. Why don't you retire? It's time for you to go." (Am. Compl. ¶ 34.) Plaintiff's counsel contends that "these comments, which are clearly based on Defendants' belief that Plaintiff is too old for the job and which offended Plaintiff, form a hostile work environment, even by themselves." (Defs.' Mem. of Law at 12.) However, that contention is contrary to the well-established jurisprudence of the Supreme Court and the Second Circuit. These comments, on one occasion, by themselves cannot as a matter of law constitute a hostile work environment claim because they cannot plausibly meet the requisite threshold of severity or pervasiveness. Nevertheless, in another portion of his opposition brief, plaintiff's counsel also points, in the alternative, to other alleged incidents set forth in the Amended Complaint involving his supervisor, described *supra*—including a transfer, denial of overtime, and other incidents—which plaintiff claims were attributed to his age and created a hostile work environment. (*See* Pl.'s Mem. of Law in Opposition at 6 ("Even if the above mentioned facts do not constitute independent adverse actions, the totality of these actions combine to constitute an atmosphere of adverse action and/or a hostile working environment.").) These allegations as a whole are sufficient at the motion to dismiss stage to state a plausible hostile work environment claim that survives a motion to dismiss.

(4)The Individual Defendants

The individual defendants also move to dismiss the state law claims against them on the grounds that, under New York Executive Law § 296(6), they cannot be held individually liable for employment discrimination.[8] As set forth below, the Court disagrees and concludes that the Amended Complaint asserts plausible claims against the individual defendants under Section 296(6).

Section 296(6) states that it is an unlawful discriminatory practice "for any person to aid,

[8] It is clear from the Amended Complaint that none of the federal claims are being asserted against the individual defendants; rather, the only claim against them is under Section 296(6).

abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so." N.Y. Exec. Law § 296(6). In *Patrowich v. Chemical Bank*, 473 N.E.2d 11 (N.Y. 1984), the New York Court of Appeals held than an employee may not be sued individually under this section "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.* at 12.

However, the Second Circuit distinguished *Patrowich* in cases where a defendant actually participates in the conduct giving rise to a discrimination claim, stating that such a defendant may be held personally liable under the statute. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742, 754 (1998); *accord Steadman v. Sinclair*, 636 N.Y.S.2d 325, 326 (App. Div. 1996) ("Defendant's counterclaims . . . seeking to hold plaintiffs individually liable as aiders and abettors of such retaliation under Executive Law § 296 (6), have support in our recent case law holding that 'an individual may be held liable for aiding discriminatory conduct.'") (quoting *Peck v. Sony Music Corp.*, 221 A.D.2d 157, 158 (N.Y. App. Div. 1995) and citing *Tomka*, 66 F.3d at 1317); *Peck*, 221 A.D.2d at 158 ("Executive Law § 296 (6) and (7) provide that an individual may be held liable for aiding and abetting discriminatory conduct. [*Patrowich v Chemical Bank*] is not a bar to maintenance of the action."). *But see Trovato v. Air Express Int'l*, 655 N.Y.S.2d 656, 657 (App. Div. 1997).

Although defendants suggest that "*Tomka* has been criticized as running contrary to *Patrowich*," (Defs.' Reply at 9), this Court must follow binding Second Circuit precedent and apply *Tomka*. *See, e.g.*, *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008); *Huaman v. Am. Airlines, Inc.*, No. 00 Civ. 6336 (FB) (MDG), 2005 WL 2413189, at *4 (E.D.N.Y. Sept. 29, 2005); *Hasbrouck v. Bankamerica Hous. Servs., Inc.*, 105 F. Supp. 2d 31, 39 (N.D.N.Y. 2003); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003); *McCoy v. City of N.Y.*, 131 F. Supp. 2d 363, 371 (E.D.N.Y. 2001); *Turner v. Olympic Reg'l Dev. Auth.*, 89 F. Supp. 2d 241, 243 (N.D.N.Y. 2000); *Arena v. Agip USA Inc.*, No. 95 Civ. 1529 (WHP), 2000 WL 264312, at *3 (S.D.N.Y. Mar. 8, 2000).

Defendants also suggest that, even under the *Tomka* standard, there are insufficient allegations against defendants Rivera and Manheimer to amount to unlawful employment actions by these individuals. However, the Court disagrees. The Amended Complaint is replete with allegations that defendant Ryan caused plaintiff to suffer a series of discriminatory adverse employment actions—namely, three suspensions—based upon his age, as well as specific acts of retaliation against plaintiff for complaining about age discrimination that are attributed to defendant Ryan. Thus, defendants do not even attempt to make this insufficiency argument as it relates to Ryan. Although defendants Rivera and Manheimer are not alleged to have been involved in each of these alleged acts of discrimination, the Amended Complaint does allege that they each participated, or aided, in the February 2009 suspension in some way. In particular, the Amended Complaint alleges that it was Sergeant Manheimer who gave a statement to Ryan blaming plaintiff for an incident that plaintiff alleges was a pretext for age discrimination and led to his suspension. (Am. Compl. ¶ 33.) Plaintiff further alleges

that he contacted defendant Rivera, who was a Human Resources representative, regarding the incident, but that Rivera failed to take action even after promising to arrange a grievance regarding the incident.[9] These allegations, at the motion to dismiss stage, are sufficient to state a plausible claim for aiding and abetting discriminatory conduct under Section 296(6).

Accordingly, because there are sufficient allegations in the Amended Complaint (when viewed most favorably to plaintiff) that the individual defendants personally participated in the discriminatory and/or retaliatory conduct to support a plausible aiding-and-abetting theory of individual liability under the NYSHRL, the Court denies the individual defendants' motion with respect to this cause of action.

* * *

In sum, the Court concludes that the federal and state age discrimination claims, the federal and state hostile work environment claims, as well as the state retaliation claim under Section 296, survive a motion to dismiss as against the corporate defendants. In addition, the state law claim under Section 296 against the individual defendants also survives a motion to dismiss. Although defendants have suggested in the motion papers, and again at oral argument, that defendants were justified in imposing these suspensions and that there is no evidence of any kind to support these allegations of discriminatory conduct by the defendants, these evidentiary issues cannot be decided at the motion to dismiss stage. Thus, although the defendant may believe that there is a lack of evidence to support plaintiff's claims, the "simplified notice pleading standard [under Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Instead, the defendants will have a full opportunity to raise these arguments should they move for summary judgment at the conclusion of discovery.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted in part and denied in part. With respect to the corporate defendants, the motion is denied as to (1) the federal and state age discrimination claims relating to the three alleged suspensions; (2) the state retaliation claim arising from the alleged 2007 protected activity; and (3) the federal and state hostile work environment claims. With respect to the individual defendants, the motion to dismiss the state claim against them under Section Section 296 is denied. The motion is granted as to all other claims. The parties shall proceed with discovery under the direction of Magistrate Judge Tomlinson.

SO ORDERED.

______________________

JOSEPH F. BIANCO
United States District Judge

Dated: October 28, 2010
Central Islip, New York

---

[9] The Amended Complaint also alleges that both Mainheimer and Rivera were responsible for ensuring that employees were not subject to discriminatory and/or retaliatory practices, and had the power to make employment decisions regarding plaintiff's employment. (Am. Compl. ¶¶ 9-10.)

* * *

The attorney for the plaintiff is Matthew S. Porges, Esq., of Mallilo & Grossman, Esq., 163-09 Northern Blvd., Flushing, New York 11358. The attorneys for the defendants are Barbara E. Hoey, Esq. and Lisa M. Griffith, Esq. of Littler Mendelson P.C., 900 Third Avenue, New York, New York 10022-3298.